UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAYNE MULA,

                      Plaintiff,

                                                                         Case # 15-CV-6563-FPG

v.

                                                                            DECISION AND ORDER

ABBVIE, INC.,

                      Defendant.
_____

## INTRODUCTION

Plaintiff Jayne Mula ("Plaintiff") brings this employment discrimination action against her former employer, pharmaceutical company AbbVie, Inc. ("Defendant"). Specifically, Plaintiff raises hostile work environment, retaliation, and discrimination claims under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL"). She also raises a related claim under the False Claims Act ("FCA"). Defendants have moved for summary judgement. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

## BACKGROUND[1]

Plaintiff worked as a pharmaceutical sales representative for Defendant and was responsible for promoting certain gastrointestinal drugs to physicians in Western and Central New York. Individual district managers supervised sales representatives and accompanied them on their drives to visit healthcare providers. District Manager Mario Constantini was Plaintiff's supervisor in 2007, and issued her an informal record of warning and a performance improvement

---

[1] The following facts are undisputed and are taken from each party's Statement of Material Facts unless otherwise noted.

1

plan due to her problems completing administrative responsibilities in a timely manner and making enough sales calls, which are face-to-face interactions with healthcare providers. Constantini criticized Plaintiff for the same issues in his 2010 evaluation.

I.   **McCutchan's Sexual Harassment and Alleged Retaliation**

According to Plaintiff, trouble began in earnest for her in October 2011, when District Manager Frank McCutchan became her supervisor. ECF No. 1 at 3. McCutchan made inappropriate comments to Plaintiff about her physical attributes and her family, some of which her coworkers overheard. *Id.* McCutchan told Plaintiff that she should flirt with health care providers during her sales calls, and implied to her that she was neglecting her family by working so much. *Id.* at 4. During one car ride, McCutchan told Plaintiff she had a nice pool. *Id.* When Plaintiff asked McCutchan what he meant, he told her that he had used Google Earth to view satellite pictures of her home and saw that she had a pool.

McCutchan's inappropriate behavior continued for several months, and in December 2012 or January 2013, Plaintiff complained to Defendant's Employee Relations department ("ER") and its Office of Ethics and Compliance ("OEC"), as Defendant maintained policies prohibiting workplace harassment and retaliation and required employees to report such policy violations. ECF No. 45-1 at 520. She also requested that McCutchan not field travel with her. ECF No. 45-1 at 17. ER initially informed Plaintiff that she still had to travel with McCutchan because company policy required sales representatives to travel with managers, but ER ultimately made an exception to that policy and Plaintiff did not have to travel with McCutchan again. ECF No. 45-1 at 495.

After Plaintiff reported McCutchan, she alleges that he retaliated against her in various ways, including by giving her "achieves expectations" ratings instead of "exceeds expectations" ratings in her 2012 year-end performance review, reporting her to OEC for a suspicious hotel bill

and for potentially falsifying call records, and for refusing to communicate with her. ECF No. 45-2 at 12. She also alleges that Doug Haling, the Regional Manager for Plaintiff's district and McCutchan's supervisor, had not made himself available to talk to Plaintiff in retaliation for her complaints against McCutchan. Plaintiff reported these retaliation allegations to ER.

While ER was still investigating Plaintiff's claims against McCutchan, McCutchan resigned from the company in August 2013 for unrelated reasons. On October 12, 2013, ER concluded its investigation of Plaintiff's harassment allegations against McCutchan and determined that her allegations were substantiated. Consequently, ER changed McCutchan's rehire status so that he was ineligible to be rehired if he applied for a job at AbbVie again. ECF No. 41-1 at 501. However, ER determined that Plaintiff's retaliation allegations were unfounded. McCutchan's performance reviews had already been trending downward before he learned that Plaintiff had reported him to ER. ECF No. 45-2 at 3. After field travel in August 2012, for instance, McCutchan rated Plaintiff "partially achieves expectations" for failing to visit a sufficient number of health care providers because of her poor territory organization. Additionally, although Plaintiff feared that any negative comments in her reviews would jeopardize her prospects for a raise, she still received a raise in 2012—the same year in which she alleges that McCutchan gave her an unfairly critical year-end rating of "achieves expectations." ECF No. 45-1 at 56.

ER also found that it was not retaliatory when McCutchan reported Plaintiff to OEC for suspected falsifications. ECF No. 45-1 at 385. ER found that Plaintiff submitted inaccurate information regarding a hotel stay on an expense report and omitted the names of attendees of a business lunch in another report. *Id.* ER found in both cases that Plaintiff did not intend to deceive anyone, but that McCutchan was justified in reporting the issues to ER instead of directly discussing them with Plaintiff. *Id.* ("Particularly in light of Jayne's request that [McCutchan] not

3

have contact with her, his report to ER . . . was appropriate in order to get guidance on how best to address the questionable expense."). Finally, ER concluded that Plaintiff's complaint that Doug Haling was treating her differently was unfounded. ECF No. 45-1 at 498.

## II. Phelps's Retaliation and Territorial Realignment

After McCutchan resigned in August 2003, Jeffrey Phelps took over as Plaintiff's district manager. Plaintiff and Phelps did not get along from the start: Phelps was frustrated by Plaintiff's perceived hostility, her failure to make a sufficient number of sales calls and to perform her administrative duties, and her resistance to following company policies, and he expressed his frustration in Plaintiff's performance reviews and in a coaching memorandum that he issued to her. He also reported her to OEC for potentially violating company policy by donating toys to a hospital in Syracuse, which could have been perceived as a quid pro quo arrangement with the hospital, and Plaintiff had repeatedly ignored Phelps's requests that she stop donating toys. He also told OEC and ER that Plaintiff was having inappropriate conversations with doctors about company grants, was not correctly recording the details of her sales calls in a company database, and was accusing other sales representatives of faking sales calls.

Plaintiff believed that Phelps was being hostile and retaliating against her for reporting his friend McCutchan for sexual harassment. Because McCutchan and Phelps were friendly and McCutchan had recommended Phelps as his replacement, Plaintiff believed that Phelps resented her for the incident with McCutchan. Additionally, Plaintiff believes that Phelps knew about the harassment investigation because McCutchan sent Phelps an email in January 2014 with a zip file attachment labeled "Mula," although Phelps claims he did not read all of the attached files and thought the email was odd. ECF No. 45-1 at 49.

4

Plaintiff complained to ER that Phelps was retaliating against her, but ER investigators concluded that her allegations were unfounded because Phelps wrote his performance reviews based on his firsthand observations of her work, and he had genuine reasons to believe that Plaintiff was violating company policies. Furthermore, Phelps was not singling Plaintiff out and had reported at least one other sales representative for similar issues.

Plaintiff also alleges that Doug Haling neglected to timely inform her that AbbVie was expanding her sales territory. AbbVie increased the size of Plaintiff's sales territory based on the recommendations of an outside vendor to insure that each sales representative had the same opportunity to meet with a sufficient amount of healthcare providers. The realignment became effective on July 1, 2013, and it was intended in part to help Plaintiff because she complained that many medical institutions in her sales area had policies restricting access to physicians. Plaintiff states that she was only given about one month's notice of the change, while representatives in other realigned territories found out about their new territories earlier in 2013. But Haling also states that he found out about the realignment around the same time that Plaintiff did. ECF No. 45-1 at 118.

### III. Off-Label Drug Marketing

In addition to reporting McCutchan to ER for sexual harassment, Plaintiff also reported him to OEC for three incidents related to the marketing of the drug Creon. First, Plaintiff alleged that McCutchan improperly trained his sales representatives to talk about fecal fat testing when marketing Creon. Second, Plaintiff alleged that McCutchan asked to review talking points of a doctor who AbbVie had hired to do a presentation. Third, he asked that doctor, "[i]f during the Q and A, a doctor was to ask you how you write [a prescription for] Creon . . . what would your

5

response be?" ECF No. 45-1 at 139. She also alleged that McCutchan instructed her to market Creon for off-label use, but it is not evident from the record that she reported this concern to OEC.

While the findings of OEC's investigation are not included in the record, Doug Haling looked into the first incident separately. While Haling faulted McCutchan for not running his presentation on fecal fat testing by AbbVie's training department before sharing it with sales representatives, he concluded that instructing employees to discuss such testing when marketing Creon was appropriate. ECF No. 45-1 at 53-55. Fecal fat testing is a way of diagnosing a condition that Creon treats and is permitted under Creon's FDA-approved label. *Id.*

## IV. Leaving AbbVie

In June 2014, Plaintiff took a medical leave of absence from AbbVie and never returned. On December 23, 2014, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On June 22, 2015, the EEOC issued a Notice of Dismissal and Notice of Rights.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Sousa v. Roque*, 578 F.3d 164, 169 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Id*. The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. The court

resolves all ambiguities and draws all factual inferences in favor of the nonmovant, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56).

To defeat summary judgment, therefore, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. N.Y.C.*, 132 F.3d 145, 149 (2d Cir.1998).

## II. Plaintiff's Time-Barred Claims

As a threshold matter, Defendant argues that Plaintiff's Title VII claims for discrimination, retaliation, and hostile work environment are time-barred because Plaintiff did not timely file a charge with the EEOC. Plaintiff's Title VII claims are time-barred if she did "not file a charge with the EEOC within 300 days after the alleged unlawful employment practice." *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133 (2d Cir. 2003). The Court may consider otherwise time-barred claims under the "continuing violation doctrine" if Plaintiff "has experienced a continuous practice and policy of discrimination," *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001), but she must allege that at least "one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220. Plaintiff filed a charge of discrimination with the EEOC on December 23, 2014. As her discrimination and hostile work environment claims relate solely to McCutchan's conduct, the last possible day that he could have discriminated against or harassed Plaintiff was on the day of his

7

resignation, July 24, 2013. That day was 517 days before Plaintiff filed a charge with the EEOC—well outside the 300 day limit. Her Title VII hostile work environment and discrimination claims are thus time-barred, and the continuing violation doctrine does not save them.[2]

Additionally, Plaintiff's Title VII retaliation claim is partially time-barred. Her retaliation claim relates in part to McCutchan's conduct, all of which occurred more than 300 days before Plaintiff filed a charge with the EEOC. Additionally, Plaintiff claims that Doug Haling retaliated against her by not informing her about the territorial realignment or making himself available to her during her dispute with McCutchan, but those events also occurred more than 300 days before Plaintiff filed a charge with the EEOC and are therefore time-barred.[3] Plaintiff's retaliation allegations against Phelps are not time-barred, as her relevant interactions with him occurred within 300 days of filing a charge with the EEOC. The Court will examine those allegations later in this opinion.

### III.  Plaintiff's Abandoned Claims

As another threshold matter, Defendant argues that Plaintiff abandoned her NYSHRL discrimination claim by neglecting to mention it in her response to Defendant's Motion for Summary Judgment. The Court may "deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. N.Y.C.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998)) (collecting cases). In its Motion for Summary Judgment, Defendant argues at length that Plaintiff failed to establish two out of the four *prima facie* elements of a discrimination claim. Plaintiff's response to Defendant's Motion does

---

[2] Even if the Court could consider the time-barred complaints on the merits, they would fail for reasons stated later in this opinion.
[3] These time-barred complaints would also fail on the merits for reasons stated later in this opinion.

not address any of these arguments, and instead only responds to Defendant's arguments concerning Plaintiff's retaliation and hostile work environment claims. This failure to address Defendant's discrimination arguments constitutes abandonment of Plaintiff's NYSHRL discrimination claim.[4]

## IV. Plaintiff's NYSHRL Hostile Work Environment Claim

Plaintiff alleges that McCutchan's inappropriate comments and conduct constituted a hostile work environment based on sex and gender under the NYSHRL. The same standard governs NYSHRL claims and Title VII claims. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006). To prevail on a hostile work environment claim under Title VII and the NYSHRL, the plaintiff "must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (internal quotation marks omitted). The employee may demonstrate this specific basis "by showing that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Kariban v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir. 1994)).

Here, the Court need not determine whether McCutchan's harassment was severe or pervasive enough to alter the conditions of Plaintiff's employment or create an abusive working environment because she has not shown that McCutchan's conduct can be imputed to Defendant. Defendant maintained a policy prohibiting workplace discrimination, and the record clearly shows that ER thoroughly investigated Plaintiff's allegations against McCutchan, Phelps, and Haling and

---

[4] As with the time-barred claims, Plaintiff's abandoned discrimination claim would not have succeeded on the merits for reasons explained later in this opinion.

took action against McCutchan pursuant to that policy. The investigation may not have been as swift as Plaintiff had hoped, but it was necessarily thorough in light of the multiple subjects and witnesses involved and the ongoing nature of the events being investigated. ER ultimately credited Plaintiff's allegations against McCutchan and ensured that he would never ride with Plaintiff or work for AbbVie again, so it can hardly be said that Defendant provided Plaintiff no reasonable avenue for complaint or ignored her harassment claims. Consequently, her NYSHRL hostile work environment claim fails.

## V. Plaintiff's Title VII and NYSHRL Retaliation Claims Against Phelps

Plaintiff alleges that Jeff Phelps unlawfully retaliated against her for reporting McCutchan's sexual harassment by criticizing her work in performance reviews and a coaching memorandum, telling her she was insubordinate when she refused to complete his requested field travel report, and reporting her to the OEC for donating toys and other company policy violations. To establish the elements of a NYSHRL or Title VII *prima facie* retaliation claim, Plaintiff must show that: (1) she engaged in protected activity; (2) her employer was aware of the activity; (3) her employer took adverse employment action against her; and (4) there was a causal connection between the alleged adverse action and the protected activity. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Even after establishing a *prima facie* case, the plaintiff ultimately must show that retaliation was the "but-for" cause of the adverse action, and not just a "substantial or "motivating" factor in the employer's decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013). In other words, the plaintiff must show that the adverse employment action would not have occurred without the employer's retaliatory motive. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

Title VII, and by implication the NYSHRL, protects individuals "not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Turning to element three, then, only a "materially adverse change" in the terms and conditions of employment is severe enough to constitute an adverse employment action. To be materially adverse, the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Terry v. Ashcroft*, 336 F.3d 128, 138 (2003), and must dissuade "a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68. Examples of such a change include a demotion, decrease in wage or salary, employment termination, and significantly diminished responsibilities. *Ashcroft*, 336 F.3d at 138. Negative reports or evaluations alone are not materially adverse changes unless "they give rise to material adverse changes in work conditions." *Bowen-Hooks v. N.Y.C.*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014) (quoting *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006)). Without "proof that [the] evaluation" led to serious consequences such as a demotion or salary decrease, a plaintiff's *prima facie* case must fail. *Farina v. Branford Bd. of Educ.*, 458 Fed. App'x 13, 17 (2d Cir. 2011) (summary order).

Here, Plaintiff cannot establish that she suffered an adverse employment action at the hands of Phelps or that there was a causal connection between the alleged adverse action and her protected activity. Plaintiff argues that Phelps's negative performance evaluations, field travel reports, and his report to the OEC jeopardized her continued employment and salary. Yet Plaintiff points to no evidence indicating that her job or salary was actually in jeopardy, and points to no law indicating that the mere *threat* of material changes in working conditions is an adverse employment action. Indeed, Defendant did not reduce Plaintiff's salary, demote her, fire her, or reduce her job responsibilities due to Phelps's reports or evaluations.

11

Furthermore, even if negative evaluations standing alone constituted adverse employment action, Plaintiff could not prove that the evaluations were causally connected to her reporting McCutchan to ER. The record and the findings of ER's investigation indicate that Phelps criticized Plaintiff because of his own observations and experiences with her, and that he reported her to OEC because of well-founded concerns that she was violating company policy. He did not treat Plaintiff differently from other sales representatives, as he reported at least one other sales representative for similar issues. Even assuming that Phelps knew of Plaintiff's allegations against McCutchan, she cannot carry her ultimate burden of proving that retaliation was a "but-for" cause of Phelps's negative reviews. There is an abundance of evidence in the record establishing that Phelps had legitimate concerns about Plaintiff's work and her refusal to follow his directions—concerns that her former supervisors shared in their own evaluations of Plaintiff. Plaintiff's NYSHRL and Title VII retaliation claims against Phelps therefore fail.

## VI.  Plaintiff's NYSHRL Retaliation Claim Against McCutchan[5]

Plaintiff's retaliation claim against McCutchan fails for the same reasons as her retaliation claim against Phelps: she cannot establish an adverse employment action or a causal connection. First, Plaintiff's retaliation allegations against McCutchan are based primarily on his 2012 year-end performance review giving her an overall rating of "achieves expectations," hardly a negative review to begin with. Even if it were a decidedly negative review, the review alone does not constitute an adverse employment action for the same reasons that Phelps's critical reviews did not. Although Plaintiff claims that her evaluations impacted her prospects for a raise, Plaintiff received a raise in 2012—the same year in which McCutchan wrote the "achieves expectations" year-end review.

---

[5] Plaintiff's Title VII retaliation claim against McCutchan is time-barred

In any event, Plaintiff cannot establish a causal connection between her protected activity of reporting McCutchan and the alleged adverse action of his writing purportedly critical performance evaluations. Like Phelps's criticisms of Plaintiff, McCutchan's critiques were well-founded and similar to those that Plaintiff's previous supervisor, Mario Constantini, had with Plaintiff's performance. Plaintiff also took issue with some of the criticisms in McCutchan's other reviews from 2012, but McCutchan wrote all of those evaluations before he learned that she had undertaken the protected activity of reporting him to ER for sexual harassment. Finally, as ER's findings indicate, McCutchan had good reason to share his concerns about Plaintiff's compliance with company policy with OEC. All of these facts clearly establish that McCutchan did not take adverse employment action against Plaintiff, that there was no causal connection between his reports and her protected activity of reporting him, and that retaliation was not the but-for cause of McCutchan's allegedly retaliatory conduct.

## VII. Plaintiff's NYSHRL Claim Against Haling

Plaintiff claims that Doug Haling retaliated against her for reporting McCutchan to ER by withholding news of her territorial realignment from her. But Haling testified that he found out about the realignment at the same time that Plaintiff did—about one to two months before the realignment occurred. Nothing in the record, including Plaintiff's deposition testimony, contradicts Haling's statement. In any event, although the realignment significantly expanded Plaintiff's territory, the salutary purpose behind it was to help sales representatives like Plaintiff make a greater number of sales calls. Changing an employee's sales territory is a far cry from actions that are objectively adverse, such as firing or demoting an employee. *See Szarzynski v. Roche Labs., Inc.*, No. 07-CV-6008, 2010 WL 811445, *5, *13 (W.D.N.Y. Mar. 1, 2010) (holding

that employer's failure to grant plaintiff's request for a realignment of territory was too minor of an action to constitute an adverse employment action).

Furthermore, Plaintiff cannot show a causal connection between her reporting McCutchan to ER and Defendant's decision to realign some sales territories. An outside vendor recommended changing Plaintiff's sales territory, and there is no evidence that Defendant withheld the news of the territorial change from Plaintiff or was upset with her for reporting McCutchan to ER. Plaintiff therefore has no NYSHRL retaliation claim against Haling.

## VIII. FCA Retaliation

Plaintiff claims that Defendant violated the FCA's retaliation provision by discriminating against her for reporting McCutchan for improperly marketing Creon. To prevail under the FCA's retaliation provision, Plaintiff must prove that (1) she engaged in conduct protected under the FCA, (2) that Defendant was aware of her conduct, and (3) that she was terminated or otherwise discriminated against in the terms and conditions of her employment. *See Mikes v. Strauss*, 889 F. Supp. 746, 752 (S.D.N.Y. 1995); 31 U.S.C.S. § 3730. Protected conduct is that intended to expose the submission of false or fraudulent claims for payment to the government. *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 265 (W.D.N.Y. 2010). Plaintiff alleges that she engaged in protected conduct by reporting McCutchan to the EEOC for directing sales representatives to talk about fecal fat testing for Creon patients, asking to review a physician's talking points, and asking a doctor how or if they wrote prescriptions for Creon. She also claims that McCutchan instructed sales representatives to talk to doctors about prescribing Creon for off-label purposes related to diabetes.

Plaintiff cannot show that she engaged in protected conduct under the FCA. Plaintiff's first allegation, even if true, is not wrongful given that discussing fecal fat testing is permissible

14

under FDA regulations. It is also not evident how her other two allegations concern unlawful activity, and they certainly do not pertain to submitting false claims for payment to the government. Finally, the record does not show that Plaintiff ever reported McCutchan for telling sales representatives to instruct doctors to prescribe Creon to diabetics. Even if she did report McCutchan for encouraging off-label marketing, absent evidence that her report concerned the submission of false claims, she cannot claim that her reporting was protected conduct under the FCA. As discussed previously, even if Plaintiff had engaged in protected conduct, she cannot show that Defendant discriminated against her.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 45) is GRANTED and this case is DISMISSED. Defendant's Motion to Seal (ECF No. 44) is DENIED as MOOT. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: January 21, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court